UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    SUSAN B. SIMPSON,                         Case No. 09-22178-dob
                                                         Chapter 13 Proceeding
        Debtor.                                Hon. Daniel S. Opperman
_____/

OPINION REGARDING REMAINING ISSUE OF DAMAGES RELATING TO MOTION OF
BRIAN SIMPSON TO SET ASIDE PRIOR COURT ORDER AND SALE OF PROPERTY

      The Court concluded the evidentiary hearing regarding the Motion to Set Aside Prior Court Order and Sale of Property filed by Brian Simpson. Pursuant to the Court's Order dated July 27, 2012, Brian Simpson's Motion was denied with the exception of the issue of "his request for damages and/or attorney fees he seeks to recover against the Debtor, Susan Simpson, for alleged fraud." In lieu of making oral arguments, the Court directed counsel to submit written briefs, and now issues its opinion on the remaining issue of damages.

Facts

      The following background facts are generally undisputed by the parties.[1]

      Brian Simpson ("Mr. Simpson") and Susan Simpson ("Debtor") were divorced prior to Susan Simpson's Chapter 13 bankruptcy filing. During their marriage, Mr. Simpson operated a successful excavating business with his primary gravel pit located at the property that is the subject of the instant Motion. The divorce was very litigious and eventually the divorce judgment was entered after a ruling made by the state divorce court on December 3, 2007. The following pertinent property division was made by the state court in the Judgment of Divorce:

---

[1] The Court generally recites the facts as stated by Brian Simpson in his Closing Argument Brief, dated August 17, 2012, Docket No. 266.

1

The Plaintiff, Susan Simpson, shall be the sole and separate owner of the marital home of the parties and 20 acres located on 5800 Van Dyke Road, Cass City, Michigan 48726 which is more particularly described as:

Legal description to be established by survey which will include pole buildings, see Exhibit D, a copy of which is attached hereto and incorporated herein by this reference.

The Plaintiff, Susan Simpson, shall also be the sole and separate owner of the 53.48 acres located in Evergreen Township located on Van Dyke Road more particularly described as:

Legal description to be established by survey which will include pole buildings, see Exhibit D, a copy of which is attached hereto and incorporated herein by this reference.

The Defendant, Brian Simpson, shall be the sole and separate owner of Simpson Excavating and the good will related thereto.

The Defendant, Brian Simpson, shall be the owner of the 48 acre sandpit on Van Dyke Road in Evergreen Township and more particularity described as:

Legal description to be established by survey which will include pole buildings, see Exhibit D, a copy of which is attached hereto and incorporated herein by this reference.

SURVEY

The survey descriptions mentioned herein are to be completed shall conform and be consistent to those parcels as appraised by witness, Joseph M. Robbins, 5200 Schott Road, Mayville, MI 48744.

The Judgment of Divorce referenced that a survey of the property was to be performed to comply with an appraisal previously performed by appraiser, Joseph Robbins. In the course of the divorce proceedings in state court, Mr. Simpson sold his modular home at the gravel pit, but the foundation, well and driveway remained. The appraisal of Joseph Robins set the value for the site at $3,700.00 per acre, with an additional $15,000.00 value for the well and septic.

Debtor filed this Chapter 13 bankruptcy case on June 12, 2009. On January 7, 2011, Debtor filed a Motion to Sell two parcels of real property free and clear of liens. The property to be sold

consisted of two parcels. Parcel A, consisting of a house and 20 acres, was sold to Robert Rees for $219,000.00, and Parcel B, consisting of 55.36 acres of woods, was sold to Judy K. McIntosh and Karen Osentoski for $152,000.00. Both parcels were offered as Debtor's sole property, with the proceeds to be distributed to the mortgagee, Thumb National Bank, toward application on the loan, for real estate taxes and closing costs, with any remaining proceeds to be distributed to Debtor. Upon the stipulation of Debtor, Mr. Simpson and Thumb National Bank, an Order Granting Sale of Real Estate and Hiring of Realtor was entered on January 21, 2011. ("Sale Order").

Debtor received her Chapter 13 discharge after plan completion on July 21, 2011, and her case was closed on July 26, 2011. Debtor's case was subsequently reopened to address a contempt issue involving Mr. Simpson, which resulted in an Order of Contempt on October 6, 2011, and the case was again closed on November 22, 2011. The bankruptcy case was again reopened on June 10, 2012, upon the motion of Mr. Simpson, who requested the case be reopened to allow him to file the instant Motion to set aside the Sale Order. The instant Motion concerns Parcel B only, and the sale to Judy K. McIntosh and Karen Osentoski.

In his instant Motion, Mr. Simpson asserts that he originally objected to the Debtor's January 7, 2011, Motion to Sell, "because it sold property awarded to Petitioner in the Divorce," but that he agreed to "having a survey done and a surveyor placed stakes on the property and provided a survey drawing for the parties to negotiate from." (Motion to set aside Sale Order, Docket No. 175, Paragraphs 3 and 4). Mr. Simpson asserts that he stipulated to the Sale Order upon his reliance "upon the placement of the stakes" from the survey done. Attached to Mr. Simpson's instant Motion is a letter from the surveyor, Laurence J. Wade, which Mr. Simpson asserts demonstrates that Debtor instructed Mr. Wade to move the stakes to allow her to acquire more property to be sold, and which effectively sold a portion of Mr. Simpson's property.

3

Mr. Wade's signed letter to Mr. Simpson, dated February 14, 2011, states as follows:

> I was contacted to do surveying work by Thumb National Bank on the Simpson's [sic] property. The Bank told me to get the directions on how to split the land up from Sue Simpson. Sue said the divorce court awarded everything South of the East and West quarter line to Brian Simpson. While I was surveying, Brian Simpson came up to me and said he was suppose [sic] to get the well, foundation and the sign in the divorce. So I contacted Sue and she talked to Brian and then she told me to survey that off to give it to Brian, because he would hold up the sale of the rest of the property. So I set the pins according to her direction. Late that night or the next day she contacted me to not draw up the paper work including that property, to put it back to the East and West quarter line. I asked her if I should drive out there and pull my pins around that parcel and she said no, because I will probably have to give it to Brian or he will hold up the sale of her property. Then Sue contacted me to write up the legal description and do the drawing on that portion with the well on it. I said sure when do you want it done by and she said 1:00 p.m. was court and it was around 12:30 p.m. I told her that wasn't enough time to get the paper work done by. Sue told me to hold off on the paper work until court was over. Then I was contacted by Mr. Osentoski to survey the South boundary line of what Sue had sold and to line stake it. The South line had changed due to the divorce court. I told him to give me the description from court so I could survey it. Then I started to survey it. Brian came out and talked to me and said this wasn't right and it needed to change so I pulled off the job and contacted my client. The well, house foundation and the business sign was on the land sold by Sue Simpson.

(Exhibit B, attached to Mr. Simpson's Motion to Set Aside Sale Order).

Debtor, Thumb National Bank, Mr. Simpson, and the purchasers, Judy McIntosh and Karen Osentoski thereafter stipulated to an Order entered on July 27, 2012, which denied Mr. Simpson's Motion to set aside the Sale Order, but reserved the issue of "his request for damages and/or attorney fees he seeks to recover against the Debtor, Susan Simpson, for alleged fraud," which matter was set for evidentiary hearing that same day on July 27, 2012. Mr. Simpson asserts that the value of his land "is substantially diminished as a result of the Debtor's fraudulent actions on him and this Court." In his post-hearing brief, Mr. Simpson requests damages in the amount of $29,400.00, plus "substantial" attorney fees and costs. Mr. Simpson asserts that the $29,400.00 represents the "total cost to replace the land and improvements taken by the Debtor."

At the evidentiary hearing, which took place over the course of four days, the Court heard testimony of: Debtor; Mr. Simpson; the surveyor, Laurence Wade; and Raymond Rathburn, Debtor's fiancé. The Court also received numerous exhibits into evidence, including, but not limited to: various pleadings, transcripts and orders from the state divorce court and subsequent state court proceedings, including an appraisal performed in connection with the divorce; documents relating to the subject real property both before and after the Sale Order; and the February 14, 2011, letter of Laurence J. Wade, quoted above; After the evidentiary hearing, the Court directed the parties to submit post-hearing briefs in lieu of oral closing arguments.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a) and E.D. Mich. LR 83.50. This is a core proceeding under 28 U.S.C. § 157(b)(2)(N) and (O) (orders approving the sale of property) and (other proceedings affecting the adjustment of the debtor-creditor relationship).

The issues in this action arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, -----U.S. ----, 131 S. Ct. 2594, 2608, 180 L.Ed.2d 475 (2011), and later by the Sixth Circuit Court of Appeals in *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

## Law

Pursuant to its Order dated July 27, 2012, the Court is asked to assess damages against Debtor under the Sale Order.

Although this Motion is not expressly labeled as a Motion brought pursuant to Federal Rule

of Civil Procedure 60(b)(3),[2] Brian Simpson's allegations center on Debtor's alleged fraud, misrepresentation, or misconduct in procuring a settlement of the sale with him, specifically concerning the Debtor's alleged part played in the placement of the property stakes.[3] Thus, although Mr. Simpson no longer seeks to set the Sale Order aside in its entirely, he is seeking relief from the Sale Order in terms of a finding of damages he has suffered as a result of Debtor's alleged conduct in connection with the sale and Sale Order.

Rule 60(b)(3) states:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

*****

(3) fraud (whether previously called instrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.

In the case of *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 456 (6th Cir. 2008), the Sixth Circuit Court of Appeals determined that the "common law notion of fraud" is to be applied to the facts of a case for purposes of Rule 60(b)(3). Citing Black's Law Dictionary, the *Info-Hold* Court determined that this "general definition of fraud" is, "the knowing

---

[2] Made applicable to this bankruptcy proceeding by Federal Rule of Bankruptcy Procedure 9024.

[3] At the conclusion of Mr. Simpson's post-hearing brief dated August 17, 2012, he references 11 U.S.C. § 105(a), implying that this Court should invoke equity to carry out the provisions under the Bankruptcy Code. The Court declines to analyze this matter under an isolated reading of Section 105(a), because equity is already a consideration under a Rule 60(b) analysis. As noted by the Sixth Circuit Court of Appeals in the case of *Miller v. Pennsylvania Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616, 621 (6th Cir. 2004), Section 105 powers are not unfettered, but must be consistent with, and in furtherance of the goals of, the Bankruptcy Code. *Id*. at 621 (quoting the United States Supreme Court case *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S. Ct. 963, 99 L.Ed.2d 169 (1988), which cautions that, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."

misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment." *Id*. at 456. A "purposeful bad act" is required under a "literal interpretation of Rule 60(b)(3)." *A&B Steel Shearing & Processing, Inc. v. United States*, 174 F.R.D. 65, 68 (E.D. Mich. 1997).

Pursuant to Rule 60(b)(c)(1), a motion brought pursuant to Rule 60(b)(1), (2), and (3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding."

The Court could also view the instant Motion as one brought pursuant to Rule 60(b)(6), which states that relief from the Sale Order may be appropriate for "any other reason justifying relief from the operation of the judgment."

The Sixth Circuit Court of Appeals "adheres to the view that courts should apply Rule 60(b)(6) only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989) (citations omitted). "This is because almost every conceivable ground for relief is covered under the other subsections of Rule 60(b)." *Rogan v. Countrywide Home Loans, Inc.* (*In re Brown*), 413 B.R. 700, 705 (B.A.P. 6th Cir. 2009) (citing *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir.1990)).

"Notwithstanding the extraordinary nature of relief under [Rule] 60(b)(6), district courts may employ subsection (b)(6) as a means to achieve substantial justice when 'something more' than one of the grounds contained in Rule 60(b)'s first five clauses is present." *Hopper*, 867 F.2d at 294. But the "something more" is limited to "unusual and extreme situations where principles of equity mandate relief[,] coupled with a showing that if relief is not granted[,] extreme and undue hardship will result." *Brown*, 413 B.R. at 705 (citations omitted). "Accordingly, a motion made under Rule 60(b)(6) is addressed to the trial court's discretion which is 'especially broad' given the underlying

equitable principles involved." *Hopper*, 867 F.2d at 294.

"Most of the grounds for relief relate to, if not require, new information about the case that could not reasonably have been discovered earlier. And the public policy favoring finality of judgments limits the availability of relief under [Rule 60(b)]. That is especially true in an application of subsection (6) of Rule 60(b) . . . ." *Gencorp, Inc. v. Olin Corp.*, 477 F.3d 368, 3372 (6th Cir. 2007) (internal quotation marks and citations omitted).

The burden is upon the moving party to establish the grounds for relief from judgment. *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (quoting *United States v. International Board of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001)). For motions brought pursuant to Rule 60(b)(3), the moving party must establish the opponent's fraud, misrepresentation, or misconduct by clear and convincing evidence. *Simons v. Gorsuch*, 715 F.2d 1248, 1253 (7th Cir. 1983); *see also Nagarajan v. Scheick*, 8 F.App'x. 336 (6th Cir. 2001) (unreported decision).

Analysis

A review of the docket in this case would indicate that more than one year passed between the date of the Sale Order and the date Mr. Simpson filed the instant Motion to set the Sale Order aside. The Sale Order was entered on January 21, 2011, and the instant Motion was filed on May 11, 2012, more than a year later. The Court will nevertheless analyze this Motion under Rule 60(b)(3), giving Mr. Simpson every equitable consideration in terms of tolling that he has indirectly asserted. The Court will also analyze this Motion, in the alternative, under Rule 60(b)(6).

The Court views the issue in this case to be whether Mr. Simpson demonstrated by clear and convincing evidence that Debtor did anything to mislead the surveyor, Laurence Wade, when the property boundaries were staked. Mr. Wade's testimony generally followed the course of events detailed in his February 14, 2011, letter, quoted above. Mr. Wade's testimony was that Debtor did

have discussions with him regarding the placement of stakes showing property boundaries, but in the end, the testimony was inconclusive as to how and if she directed Mr. Wade to move the stakes or leave them as they were, the former resulting in more property being sold, which Mr. Simpson asserts resulted in the indicated damages to him in the amount of $29,400.00.[4] The Court generally discounts the testimony of Debtor, Mr. Simpson, and Debtor's fiancé, as self-serving, but even giving every benefit of the doubt to Mr. Simpson's testimony, which this Court need not do because Mr. Simpson has the burden of proof, the Court concludes that Mr. Simpson has not demonstrated the requisite level of fraud, misrepresentation, or misconduct required for it to grant relief to Mr. Simpson under Rule 60(b)(3). Mr. Simpson did not demonstrate by clear and convincing evidence that Debtor acted fraudulently in connection with directing the staking of the property boundaries. Mr. Simpson's version of the facts are inconclusive as to whether Debtor made any affirmative misrepresentations to the surveyor, Laurence Wade, Mr. Simpson, or the Court. The Court does not view the property boundaries in the Sale Order as anything more than a misunderstanding on the part of Mr. Simpson, which does not rise to the level required by Rule 60(b)(3).

To complete this analysis, the Court reaches the same conclusion if the less burdensome standard of the preponderance of the evidence is used. Although admittedly a closer call when this less stringent standard is applied, the Court still concludes that at best, Mr. Simpson misunderstood the boundary line and that while the Debtor's actions and statements undoubtedly influenced that understanding, her conduct and words still fall far short of fraud, misrepresentation, or misconduct to warrant relief under Federal Rule of Civil Procedure 60(b)(3).

---

[4] Damages are calculated by Mr. Simpson as follows: $3,700 for the 1 acre of land at issue; plus $15,000 for the value of the well and septic; plus $7,000 for the value of the foundation; plus the replacement value of $1,500 for a sign on the property; plus $2,200 electrical hookup replacement costs.

Turning to Rule 60(b)(6), the Court finds that Mr. Simpson has not demonstrated the "exceptional or extraordinary circumstances" required for this Court to first determine that the facts of this case are not addressed by another subsection of Rule 60(b). As discussed above, the Court finds that Rule 60(b)(3) more properly addresses Mr. Simpson's arguments; however, the Court also finds that Mr. Simpson has not met his burden of establishing that Rule 60(b)(3) provides a basis for relief. Even if this Court were to determine that it should nevertheless still analyze this case under Rule 60(b)(6), equity does not weigh in favor of relief from the Sale Order. Mr. Simpson had ample opportunity, with the advice of counsel, to review the proposed Sale Order, which is evidenced by the signed stipulation of his consent to it, though counsel, dated January 21, 2011.[5] If Mr. Simpson had doubts about the legal description and boundaries noted, his opportunity to dispute the Sale Order was in January, 2011, and in the absence of a showing of fraud, misrpresentation, or misconduct, equity cannot resurrect this opportunity.

## Conclusion

For the above stated reasons, the Court denies Mr. Simpson's request for damages from Debtor related to the Motion to set aside the Sale Order. The Court directs Debtor, as the prevailing party, to draft and submit an appropriate order.

**Not for Publication**

```
Signed on March 25, 2013
                                    /s/ Daniel S. Opperman
                              Daniel S. Opperman
                              United States Bankruptcy Judge
```

---

[5] Docket No. 107.